Document Number Case Number
212         07-C-0158-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
10/16/2007 09:32:13 AM CDT

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAURUS IP, LLC,

               Plaintiff,

      v.

DAIMLERCHRYSLER CORPORATION,
DAIMLERCHRYSLER COMPANY, LLC and
MERCEDES-BENZ USA, INC.,

             Defendants.[1]

OPINION and ORDER

07-C-158-C

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MERCEDES-BENZ USA, INC and
DAIMLERCHRYSLER COMPANY, LLC,

            Third Party Plaintiffs,

      v.

TAURUS IP, LLC, ORION IP, LLC,
PLUTUS IP, LLC, CONSTELLATION IP, LLC,
PLUTUS IP WISCONSIN, LLC and
ERICH SPANGENBERG,

---

[1]Defendants Toyota Motor North America, Inc. and Toyota Motors Sales USA, Inc. have been dismissed from this case pursuant to a stipulation between plaintiff Taurus IP, LLC and these defendants.  Dkts. # 153, 155.  I have altered the caption accordingly.

1

Third Party Defendants.[2]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Taurus IP and third party defendants Orion IP, Plutus IP, Plutus IP Wisconsin and Constellation IP are limited liability companies known as nonpracticing entities, or NPEs.  See, e.g., Jennifer Kahaulelio Gregory, The Troll Next Door, 6 J. Marshall Rev. Intell. Prop. L. 292 (Winter 2007); Blackberries and Barnyard: Patent Trolls and the Perils of Innovation, 82 Notre Dame L. Rev. 1809, 1810 n.3 (June 2007).  They do not manufacture products, but instead hold licenses to numerous patents, which they license and enforce against alleged infringers.  All five companies are operated by third party defendant Erich Spangenberg.

In March 2007, plaintiff Taurus IP brought this lawsuit, contending that defendants DaimlerChrysler Corporation and Mercedes-Benz USA, Inc. have infringed a patent it holds, United States Patent No. 6,141,658  (the '658 patent).  In response, defendants brought counterclaims against plaintiff and sued Orion IP, Constellation IP, Plutus IP, Plutus IP Wisconsin and Erich Spangenberg.  Among their causes of action, defendants contend that the third party defendants breached the terms of a patent Licensing Agreement entered into by defendant DaimlerChrysler and a predecessor to third party defendant Orion IP (also

---

[2]Plutus IP Wisconsin was named as a third-party defendant in defendants' amended counterclaims.  Dkts. # 90, 92.  I have altered the caption accordingly.

named Orion IP, LLC) in 2006 and conspired to harm both defendants by hiding the '658 patent during settlement of a previous lawsuit in order to be able to bring the present suit. In addition, defendant DaimlerChrysler contends that the third party defendants fraudulently induced it to enter into a licensing agreement that it believed would protect it from lawsuits such as the present one.

Now before the court are a host of motions filed by third party defendants asking the court to dismiss defendants' amended counterclaims and third party complaints on the grounds that (1) the court lacks personal jurisdiction over the third party defendants other than Taurus IP and Plutus IP Wisconsin and (2) defendants have failed to state a claim for breach of contract, fraud or conspiracy. Defendants dispute the motions and move in the alternative for (1) additional discovery if the court concludes that they have not met their burden; or (2) dismissal of the case if personal jurisdiction is found to be lacking.

Many of defendants' contentions center on the relationship between Spangenberg, plaintiff and the other third party defendants that Spangenberg allegedly controls, which defendants allege are his "alter egos." Because I conclude that defendants have established that plaintiff and third party defendants Orion IP, Constellation IP and Plutus IP are alter egos of Spangenberg and vice versa for purposes of establishing personal jurisdiction and stating a claim under Rule 8, I conclude that defendants have made a <u>prima facie</u> showing that personal jurisdiction exists with respect to third party defendants and have stated a

claim for breach of contract.  Therefore, third party defendants' motions to dismiss for lack of personal jurisdiction, defendants' motions in the alternative for additional discovery or dismissal under 12(b)(7) and third party defendants' motions to dismiss for breach of contract will be denied.  Defendants' civil conspiracy and fraudulent inducement claims will be dismissed for failure to state a claim.

Before turning to the facts, a word regarding procedure is in order.  When a party files a motion to dismiss for lack of personal jurisdiction, the court has two options.  It may hold a hearing or issue a ruling based on the parties' written submissions.  When the court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence.  Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003); Hyatt International Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).  However, when the district court rules on a defendant's motion to dismiss in reliance on the submission of written materials, without the benefit of an evidentiary hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction."  Id. In evaluating whether the prima facie standard has been satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record."  Purdue Research Foundation, 338 F.3d at 782; RAR, Inc. v. Turner Diesl, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997).  Because no hearing has been held on the parties' motions to dismiss for lack of personal jurisdiction, I have construed all facts regarding personal

4

jurisdiction in favor of defendants, the nonmoving parties.

For purposes of ruling on the parties' motions to dismiss defendants' amended counterclaims and third party complaints against them under Fed. R. Civ. P. 12(b)(6), I have accepted as true the well-pleaded facts of the amended counterclaims and third party complaints and have drawn all inferences in favor of defendants.

Finally, without converting a motion to dismiss to one for summary judgment, I may consider not only the complaint, but also any documents attached to the complaint and documents attached to the motion to dismiss if such documents are referred to in the complaint and are central to the plaintiff's claim. McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006). In this case, defendants attach to their counterclaims and third party complaints a redacted version of the patent Licensing Agreement that is central to their claims. Third party defendants have submitted copies of the unredacted version of the Licensing Agreement, whose contents are not disputed by defendants. Thus, aside from the counterclaims and third party complaints, I also consider and draw from the unredacted Licensing Agreement.

From defendants' amended counterclaims and third party complaints and the Licensing Agreement entered into by defendant DaimlerChrysler and third party defendant Orion IP, I draw the following facts.

ALLEGATIONS OF FACT

A.  <u>Parties</u>

Plaintiff Taurus IP, LLC is a limited liability company incorporated in Wisconsin. It is wholly owned by third party defendant Plutus IP Wisconsin, which is also its managing member.

Third party defendant Plutus IP Wisconsin, LLC is a limited liability company organized under the laws of Wisconsin, with its principal place of business in Monona, Wisconsin.  Plutus IP Wisconsin was formed on April 4, 2007.  Third party defendant Spangenberg is Plutus IP Wisconsin's managing member.

Third party defendant Orion IP, LLC is a limited liability corporation organized under the laws of Texas with its principal place of  business in Marshall, Texas.  Orion IP is the surviving entity of a merger between a Delaware corporation named Orion IP, LLC and a Texas corporation named Orion IP Texas, LLC.  The Texas corporation survived and changed its name to Orion IP, LLC.  The former Delaware corporation named Orion IP, LLC was a successor corporation to Orion IP Holdings, LLC, a limited liability corporation organized under the laws of Delaware.

Third party defendant Plutus IP, LLC is a limited liability corporation organized under the laws of Texas.  It was formerly named Plutus IP Texas, LLC, which was the surviving entity of a merger between Plutus IP Holdings, LLC, organized under the laws of

6

Delaware, and Plutus IP Texas, organized under the laws of Texas.

Third party defendant Constellation IP, LLC is a limited liability corporation organized under the laws of Texas with its principal place of business in Marshall, Texas. It was formed on February 6, 2006. Constellation IP is the successor corporation to Constellation IP Holdings, LLC, a former Texas limited liability corporation. Constellation IP owns one patent, which it is in the business of enforcing and licensing.

Third party defendant Erich Spangenberg is a resident of Texas. He serves as the managing member of plaintiff Taurus IP and third party defendants Plutus IP, Plutus IP Wisconsin, Orion IP and Constellation IP.

### B. The Orion Companies

On January 6, 2004, a predecessor to third party defendant Orion IP with the same name was organized as a limited liability corporation under Delaware law. (To avoid confusion, I will call this entity "Orion IP Delaware.") Third party defendant Spangenberg executed an application for registration in California on Orion IP Delaware's behalf. On February 22, 2004, Orion IP Delaware acquired rights to three patents: United States Patent Nos. 5,615,342 (the '342 patent), 5,367,627 (the '627 patent) and 6,141,658 (the '658 patent).

On June 16, 2004, both Caelum IP, LLC and a company named Taurus IP, LLC were

formed in Delaware.  (The Taurus IP, LLC formed in Delaware is an entity separate from plaintiff Taurus IP, LLC, which was formed in Wisconsin.  To avoid confusion, I call the non-plaintiff Taurus IP, LLC "Taurus IP Delaware.")  On the same day, Taurus IP Delaware filed for a certificate of authority in Texas, representing that it was member-managed by a company called Plutus IP Holdings, LLC.  Third party defendant Spangenberg executed an application for registration in Texas on behalf of Caelum IP.

On August 30, 2004, Orion IP Delaware assigned its rights in the '658 patent to Caelum IP.

On August 31, 2004, Plutus IP Holdings filed an application for registration in California, stating that the company had been formed on January 8, 2004, in Delaware.  The application was signed by third party defendant Spangenberg.

On February 3, 2006, Plutus IP Texas, LLC, third party defendant Constellation IP, LLC and Taurus IP Texas were formed in Texas.  Third party defendant Spangenberg consented to the use of the name "Plutus IP Texas, LLC" in his role as sole managing member of third party defendant Plutus IP, LLC.  Third party defendant Constellation IP and Taurus IP Texas are governed by third party defendant Plutus IP, whose sole managing member is third party defendant Spangenberg.

On February 6, 2006, several mergers occurred.  Plutus IP Holdings, LLC merged into Plutus IP Texas and changed its name to Plutus IP, LLC.  Taurus IP Delaware merged into

8

a company named Taurus IP Texas, LLC and Caelum IP merged into third party defendant Constellation IP.  Caelum IP assigned all of its rights in the '658 patent to third party defendant Constellation IP when it merged.  Third party defendant Spangenberg signed all the merger documents for all the entities as their respective sole managing member.  Caelum IP's merger documents were not recorded until February 14, 2006.

### C.  The Texas Lawsuit and Licensing Agreement

On August 25, 2004, Orion IP Delaware sued defendant DaimlerChrysler and others in the United States District Court for the Eastern District of Texas.  Later, Orion IP Delaware filed a separate action in the Eastern District of Texas, naming defendant Mercedes-Benz as a co-defendant.  In both lawsuits, Orion IP Delaware contended that defendants were infringing the '627 and '342 patents through their use of certain computer systems to manage their websites.  Specifically, Orion IP Delaware accused defendants of "making and using supply chain methods, sales methods, sales systems, marketing methods, marketing systems and inventory systems covered by" the '627 and '342 patents.

When Orion IP Delaware initiated its lawsuit against DaimlerChrysler, it still owned the '658 patent (for five more days).  Orion IP Delaware never alleged that defendants were infringing the '658 patent.  During the litigation, Orion IP Delaware produced documents showing it had owned the '658 patent but assigned its ownership to Caelum IP.

On February 9, 2006, three days after Caelum IP merged with third party defendant Constellation IP and assigned it the '658 patent, defendant DaimlerChrysler and Orion IP Delaware engaged in settlement discussions. During these discussions, the DaimlerChrysler representatives told third party defendant Spangenberg that any settlement would have to be comprehensive and would have to authorize the website activities of defendant DaimlerChrysler and its related companies, including defendant Mercedes-Benz, and would cover all patents owned by Orion IP Delaware and its related companies. Third party defendant Spangenberg agreed to these conditions and settlement discussions commenced.

During settlement, third party defendant Spangenberg never told defendant DaimlerChrysler representatives that the current owner of the '658 patent was another entity he managed or that he, Orion IP Delaware, or any related company believed that defendant DaimlerChrysler's activities infringed the '658 patent. Also, third party defendant Spangenberg did not tell defendant DaimlerChrysler that he believed the release provisions of the agreement would not cover the '658 patent.

On February 15, 2006, Orion IP Delaware and defendant DaimlerChrysler entered into a Settlement and Licensing Agreement. Under the Agreement, defendant DaimlerChrysler agreed to pay $2.3 million to Orion IP Delaware to settle the lawsuit. The Agreement licensed defendants to use their allegedly infringing technology in certain ways:

3.1 <u>Orion License to DCC</u>. Subject to the payment provided under Article V

10

and the terms and conditions of this Agreement, Orion hereby grants to DCC and the DCC Related Companies a non-exclusive, non-transferable (except as provided for in Article VII), royalty-free, fully paid-up, worldwide license, without the right to sublicense, under the Orion Patents to practice, design, make, have made, operate, have operated, import and use the Licensed Technology in the Field . . .

The Agreement also released defendants from liability for certain uses of their technology:

2.1 <u>Orion Release of DCC</u>.  Orion, on behalf of itself and the Orion Related Companies and their respective successors and assigns, irrevocably releases, acquits and forever discharges DCC and the DCC Related Companies[3] and their respective officers, directors, employees, agents, successors, assigns, representatives, and attorneys, and its and their respective customers and users, suppliers, and vendors, solely with respect to activities that would have been licensed under this Agreement if they had been performed on or after the Effective Date, in each case from any and all claims or liabilities of any kind and nature, at law, in equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, relating in any way to the Litigation or the Orion Patents.

The Agreement also indicated:

3.5 <u>No Other Rights</u>.  No rights or licenses are granted under any Patents except as expressly provided herein, whether by implication, estoppel or otherwise.  Without limiting the foregoing sentence, . . . (ii) no release or license is granted by either party, or any of its Related Companies, either directly or by implication, estoppel, or otherwise, to any Third Party for the combination of the Licensed Technology with any other items that are not Licensed Technology or for the use of such combination, except as necessary for the normal and intended use of the Licensed Technology themselves. . . .

The Agreement defined several terms to clarify its scope:

_____

[3]Elsewhere in the agreement, Mercedes Benz is identified by name as a DCC Related Company.

"Licensed Technology" means all methods, processes, apparatuses, devices, products, web sites, systems and other inventions falling within the scope of one or more claims of the Orion patents.

"Orion Related Company" means any Person on or after the Effective Date directly or indirectly controlling, controlled by or under common control with Orion, whether through the ownership of securities, as a result of contract or otherwise, it being understood that the ownership of securities or other instruments representing fifty percent (50%) or more of the outstanding voting power of a particular Person shall conclusively constitute control for purposes of this definition.

"Orion Patents" means only (i) those Patents listed in **Exhibit A** to this Agreement [U.S. Patent Nos. 5,283,865; 5,367,627; 5,493,490; 5,615,342; 5,625,776 and 6,453,302 and U.S. Patent Application Serial No. 09/556,029], (ii) any and all Patents existing or subsequently issuing from applications from which the listed Patents claim priority, (iii) any and all Patents existing or subsequently issuing from continuations, divisionals, continuations-in-part, reexaminations, reissues, extensions, and renewals of any listed Patents, (iv) any foreign counterparts of any of the foregoing in any jurisdiction of the world, and (v) any patents acquired by Orion after the Effective Date providing for or related to the cataloguing, configuration and sales of parts and vehicles.

"Third Party" means a Person other than a party to this Agreement or a Related Company of a party to this Agreement.

A choice of law provision in the Agreement provides that the "Agreement and matters connected with the performance thereof" shall be "governed in all respects" by United States and Texas law "without reference to conflict of laws principles."  The Agreement contains a termination clause indicating that upon breach of the Agreement, the licenses granted in the Agreement may be terminated.

The Agreement makes explicit representations and warranties regarding the assignment or transfer of rights before settlement:

> 8.1 <u>Representations and Warranties</u>.  (a) Orion represents and warrants as of the Effective Date that . . . (iii) it has not assigned or otherwise transferred to any other Person any rights to any causes of action, damages or other remedies, or any Orion Patents, claims, counterclaims or defenses, relating to the Litigation.

And a "merger clause" in the agreement explicitly limits the parties' reliance on previous oral promises:

> 8.9 <u>Entire Agreement</u>.  This Agreement embodies the entire understanding of the parties with respect to the subject matter hereof, and merges all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein. No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement.

### D.  <u>Post-Settlement Transactions and Patent Assignments</u>

After settlement, several other corporate changes occurred.  On March 30, 2006, Orion IP Delaware (formally named Orion IP, LLC) merged into Orion IP Texas, LLC. Orion IP Texas, LLC, the surviving entity, then changed its name back to Orion IP, LLC.

On March 5, 2007, plaintiff filed articles of organization in Wisconsin.  Third party defendant Plutus IP provided initial financing for plaintiff.

On March 10, 2007, third party defendant Constellation IP assigned all of its rights

13

in the '658 patent to plaintiff.  Third party defendant Spangenberg signed the assignment of the '658 patent on behalf of third party defendant Constellation IP in his capacity as its managing member.

On March 20, 2007, third party defendant Spangenberg directed plaintiff to file the present lawsuit, which accused defendants of "making, using, offering products for sale, and/or selling products and/or services" covered by the '658 patent. The complaint referred to several DaimlerChrysler related websites that Orion IP Delaware, the plaintiff in the Texas lawsuit, had alleged to be infringing two other patents it then owned.

On April 4, 2007, third party defendant Plutus IP Wisconsin was formed.  Sometime in April, 2007, ownership in plaintiff was transferred to Plutus IP Wisconsin.

### ADDITIONAL JURISDICTIONAL FACTS

From the parties' supplemental affidavits I draw the following facts for purposes of considering the 12(b)(2) motion.

Third party defendant Spangenberg controls third party defendants Orion IP, Constellation IP, Taurus IP, Plutus IP and Plutus IP Wisconsin on behalf of a parent entity, Acclaimed Financial Group, LLC, which is owned by Spangenberg's wife and son.  Capital flows to the corporations and companies on an "as needed basis," and licensing revenue

flows to Acclaimed Financial Group, LLC.

Spangenberg forms companies such as third party defendants Orion IP and Taurus IP with minimal capital. For example, plaintiff was formed with $1,000 provided by third party defendant Plutus IP's predecessor Plutus IP Holdings. Patents are assigned to the companies in transactions for which third party defendant Spangenberg could not describe any exchange of valuable consideration.

Third party defendant Spangenberg is the owner and managing member of plaintiff and authorized the formation of plaintiff, the assignment of the '658 patent to it and the present lawsuit.

In 2005, third party defendant Spangenberg visited Wisconsin to negotiate a license for the '658 patent with Harley-Davidson, a Wisconsin based corporation. Third party defendants Orion IP and Spangenberg entered into a patent license for the '658 patent with Harley Davidson in 2006, even though third party defendant Orion IP no longer held the '658 patent because its predecessor, Orion IP Delaware, had assigned the patent to Caelum in 2004.

DISCUSSION

A. <u>Personal Jurisdiction</u>

Personal jurisdiction is "an essential element of the jurisdiction" without which the court is "powerless to proceed to an adjudication" of the merits of a lawsuit. <u>Ruhrgas AG</u>

15

v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (citing Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).  A federal court has personal jurisdiction over a non-consenting, nonresident defendant if a court of the state in which that court sits would have jurisdiction over the lawsuit.  Giotis v. Apollo of the Ozarks, Inc., 800 F.2d 660, 664 (7th Cir. 1986).

Under Wisconsin law, determining whether personal jurisdiction may be exercised requires a two-step inquiry.  First, the court must determine whether each defendant is subject to jurisdiction under Wis. Stat. § 801.05, Wisconsin's long-arm statute.  Kopke v. A. Hartrodt S.R.L., 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662.  Then, if the statutory requirements are satisfied, the court must consider whether the exercise of jurisdiction over each defendant comports with due process requirements.  Id.  The plaintiff bears the minimal burden of making a prima facie showing that constitutional and statutory requirements for the exercise of personal jurisdiction are satisfied.  Id.

Third party defendants Spangenberg and nonresident nonpracticing entities Orion IP, Constellation and Plutus IP have moved to dismiss defendants' third party complaints against them for lack of personal jurisdiction.  Thus, defendants bear the burden of making a prima facie showing that this court may exercise personal jurisdiction over each of the third party defendants.

Defendants contend that personal jurisdiction exists over the nonresident third party

defendants, both under the alter ego doctrine and under the Wisconsin long-arm statute. In addition, defendants appear to suggest that aside from statutory grounds, this court may exercise personal jurisdiction over third party defendants under a "co-conspirator" theory. However, Wisconsin courts have not recognized a theory of specific jurisdiction based on allegations that a nonresident is part of a conspiracy. Stauffacher v. Bennett, 969 F.2d 455, 460 (7th Cir. 1992). Therefore, this court must base its exercise of personal jurisdiction on the forum state's long-arm statute and not on an "independent federal 'civil co-conspirator' theory of personal jurisdiction." Davis v. A.J. Electronics, 792 F.2d 74, 76 (7th Cir. 1986). (Defendants assert also that personal jurisdiction exists over third party defendant Plutus IP Wisconsin under § 801.05(1)(c), but Plutus IP Wisconsin has not moved to dismiss the suit against it under 12(b)(2), and does not appear to dispute personal jurisdiction, so I disregard this argument.)

1. Erich Spangenberg and the nonpracticing entities as "alter egos" of one another

Defendants' chief argument for asserting jurisdiction over the nonresident third party defendants is that the nonpracticing entities are all alter egos of Spangenberg and should be considered one and the same for purposes of personal jurisdiction. Defendants first attempt to skate past the issue of personal jurisdiction by arguing that their bare allegations that the corporations are alter egos are themselves sufficient to survive a motion to dismiss, citing

Uebelacker v. Paula Allen Holdings, Inc., 464 F. Supp. 2d 791, 799 (W.D. Wis. 2006).

However, Uebelacker addressed a 12(b)(6) motion to dismiss for failure to state a claim.  A

12(b)(2) motion to dismiss for lack of  personal jurisdiction such as this one requires the

nonmovant to "go beyond the pleadings and submit affirmative evidence supporting the

exercise of jurisdiction."  Purdue Research Foundation v. Sanofi-Sythelabo, S.A., 338 F.3d

773, 783 (7th Cir. 2003).  To establish personal jurisdiction, defendants cannot rely on bare

allegations that the nonpracticing entities are alter egos of Spangenberg.

 The alter ego doctrine and related doctrines are typically employed to pierce the

corporate veil or disregard a corporate fiction to reach a controlling entity, such as a

shareholder or parent corporation.  Select Creations, Inc. v. Paliafito America, Inc., 852 F.

Supp. 740, 773-74 (E.D. Wis. 1994).  However, the doctrine can also be "applied in reverse"

to reach a controlled entity.  Id.  (quoting 1 Fletcher, Cyclopedia Corporations § 41.70 at

707 (1990)).  The alter ego doctrine is relevant to both liability and personal jurisdiction.

IDS Life Insurance Co. v. SunAmerica Life Insurance Co., 136 F.3d 537, 540 (7th Cir.

1998).  Once the corporate veil has been pierced to reach an entity for acts done by a

controlling or controlled entity, the court may attribute those acts, as well as the relevant

contacts with the forum, to the entity behind the veil.  Id.  Thus, if all the alleged shell

corporations are determined to be Spangenberg's alter ego and vice versa, all their contacts

with Wisconsin may be considered for purposes of establishing personal jurisdiction over all

the nonresident third party defendants.

Courts begin with the presumption of corporate separateness.  Insolia v. Phillip Morris Inc., 31 F. Supp. 2d 660, 669 (W.D. Wis. 1998) (citing Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990)).  A court should look to the state of incorporation of the veiled entity to determine when and whether the corporate form should be disregarded.  Select Creations, 852 F. Supp. at 774.  Third party defendants Orion IP, Constellation IP and Plutus IP are limited liability corporations organized under the laws of Texas, so for these entities I turn to Texas law.  Plaintiff and third party defendant Plutus IP Wisconsin are limited liability companies organized under the laws of Wisconsin so for these entities I turn to Wisconsin law.

For purposes of determining whether corporate form may be disregarded for third party defendants Orion IP, Constellation IP and Plutus IP, Texas law allows the piercing of the corporate veil under the "alter ego" doctrine "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice."  Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986).  Alternatively, a corporate structure may be disregarded "when the [corporate] fiction is used as a means of perpetrating fraud."  Id.; Boyo v. Boyo, 196 S.W.3d 409, 419 (Tex. App. 2006); but see TEX. BUS. CORP. ACT ANN. art. 2.21(A)(2) (must demonstrate that holder or owner perpetrated actual fraud for direct personal benefit).

19

For purposes of determining whether corporate form may be disregarded for Taurus IP and Plutus IP Wisconsin, a corporate veil may be pierced only if "applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." Posyniak v. School Sisters of St. Francis, 180 Wis. 2d 619, 636, 511 N.W.2d 300, 308 (Ct. App. 1993) (citation omitted). However, in Wisconsin, the use of a corporation to perpetrate a fraud is not sufficient to pierce the corporate veil. Id. at 484 n.8, 419 N.W.2d 211, 217 ("injustice, absent the establishment of control [does] not constitute adequate grounds to pierce the corporate veil"). For purposes of the "alter ego" doctrine, there must also be proof that, for the transaction being attacked, an entity's finances, policy and business practice are dominated so completely "that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." Consumer's Co-Op of Walworth County v. Olsen, 142 Wis. 2d 465, 484, 419 N.W.2d 211, 217-18 (1988); see also Wis. Stat. § 183.0304 (2005-06) (common law principles for disregarding corporate entity apply to limited liability companies).

From their amended counterclaims and supplemental evidence, I conclude that defendants have established a prima facie case that third party defendant Spangenberg used the nonpracticing entities, including Orion IP and its predecessor Orion IP Delaware, Constellation IP and its predecessor Caelum IP, Plutus IP and its predecessor Plutus IP Holdings, and plaintiff Taurus IP to perpetrate a fraud. Third party defendant Spangenberg

20

directed Orion IP Delaware to transfer the '658 patent to Caelum IP five days after directing Orion IP Delaware to file the first lawsuit against defendant DaimlerChrysler. Three days before settlement talks began in that lawsuit, Spangenberg directed Caelum IP to merge into Constellation IP and assign the '658 patent to the new company. During settlement talks, Spangenberg represented, on Orion IP Delaware's behalf, that the settlement would be comprehensive. Finally, at Spangenberg's direction, Plutus IP Holdings provided $1,000 to form plaintiff, which subsequently filed the present suit.

Again drawing from defendants' amended counterclaims and supplemental evidence, I conclude that third party defendant Spangenberg exerted total control over plaintiff Taurus IP with respect to the '658 patent. First, plaintiff was formed with a mere $1,000 and therefore inadequately capitalized when it was formed. Third party defendants contend that the capitalization is adequate because plaintiff is a patent holding company, so its capital resides in the patent it owns. However, third party defendant Constellation IP did not assign the '658 patent to plaintiff until five days after plaintiff was formed, and Spangenberg could not identify the consideration exchanged for that assignment, even though he was the managing member of both corporations.

Second, plaintiff's cash flow structure is suspicious. Capital flows down to the plaintiff and the other corporations on an "as needed basis," and licensing revenue is expected to flows up to parent entity Acclaimed Financial Group, LLD, which is owned by

21

Spangenberg's wife and son.

Finally, the total activities of all the corporations regarding the '658 patent suggests that the nonpracticing entities had a unified purpose regarding their transactions of the '658 patent under their sole managing member, Erich Spangenberg.  The patent was transferred from entity to entity at times that were beneficial to a single entity, third party defendant Orion IP, during the Texas lawsuit.  In addition, the present lawsuit was brought almost immediately after plaintiff was assigned the '658 patent.  It is highly unlikely that plaintiff could have engaged in an independent decision to file this infringement suit against defendants.

Drawing all inferences in favor of defendants, I find the allegations and additional evidence are sufficient to establish a <u>prima facie</u> case that third party defendant Spangenberg used the nonpracticing entities, Taurus IP, Orion IP, Constellation IP and Plutus IP, to perpetrate a fraud against defendants and exerted such complete domination over plaintiff with respect to the '658 patent that plaintiff had no separate mind, will or existence of its own.  Under these circumstances, protecting the corporate fiction separating third party defendant Spangenberg and the nonpracticing entities would "accomplish some fraudulent purpose" or "defeat a strong equitable claim."  Thus, for purposes of establishing personal jurisdiction, I conclude that third party defendants Orion IP, Constellation IP, Plutus IP, and plaintiff Taurus IP are all alter egos of third party defendant Spangenberg.  Moreover,

22

because the "alter ego" doctrine can be applied in reverse to reach the controlled entities, I conclude that the third party defendants are all alter egos of one another.

This leads at last to the issue of personal jurisdiction.  Because plaintiff filed the present infringement suit, it is subject to personal jurisdiction for the counterclaims that defendants have filed.  Wis. Stat. § 801.06 (authorizes personal jurisdiction "over a person with respect to any counterclaim asserted against that person in an action which the person has commenced").  By filing the present suit, Taurus IP in effect consented to personal jurisdiction, thus eliminating long-arm statute and due process concerns.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985).  The other third party defendants are subject to personal jurisdiction under the alter ego doctrine, which imputes consent to jurisdiction to the alter egos of a consenting party (plaintiff) for the simple reason that the actions of a party are those of its alter egos.  See discussion of this point in Packer v. TDI Systems, Inc., 959 F. Supp. 192, 203 (S.D.N.Y. 1997).  Even if a question remained about exercising jurisdiction over the nonpracticing entities other than plaintiff, the alleged mastermind, third party defendant Spangenberg, would still be subject to personal jurisdiction in Wisconsin, as explained hereafter.

2.  Wis. Stat. § 801.05

Where a party has not consented to personal jurisdiction, the court must first

23

determine whether it is subject to jurisdiction under Wis. Stat. § 801.05, Wisconsin's long-arm statute. Kopke, 2001 WI 99, ¶ 8, 629 N.W.2d 662. Wisconsin's long-arm statute authorizes courts in the state to exercise jurisdiction over nonresident defendants in a number of specified circumstances. Defendants contend that third party defendant Spangenberg's role as managing member of domestic corporations Taurus IP and Plutus IP Wisconsin subjects him to personal jurisdiction under § 801.05(8). Section 801.05(8) authorizes the exercise of personal jurisdiction over a director, officer or manager of a domestic corporation "where the action arises out of the defendant's conduct as such officer, director or manager or out of the activities of such corporation or limited liability company while the defendant held office as a director, officer or manager."

Third party defendants contend that subsection (8) cannot reach Spangenberg because his allegedly fraudulent behavior occurred during the 2006 settlement negotiations, and Spangenberg's only domestic corporations, Taurus IP and Plutus IP Wisconsin, were not formed until 2007. Third party defendants are correct in their position that Spangenberg's alleged fraud cannot form the basis of personal jurisdiction under subsection (8). However, defendants' breach of contract claims may also be considered; subsection (8) requires only that "the action arise[] out of" the alleged conduct or activity.

Third party defendants deny that subsection (8) can apply. They contend that defendants' breach of contract claims fail, depriving this court of personal jurisdiction over

24

Spangenberg under subsection (8) on that basis. Although I address defendants' breach of contract claims below and conclude otherwise, I do not need to delve into the intricacies of defendants' breach of contract claims before deciding that defendants have established a prima facie case for exercising personal jurisdiction over Spangenberg under the long-arm statute. For now, it is enough that a claim (successful or not) "arises out of" third party defendant Spangenberg's conduct or plaintiff's activities while Spangenberg was a managing member of plaintiff. Although third party defendants have argued that neither Spangenberg nor plaintiff breached the contract because neither of them was an actual party to the original contract (Spangenberg signed the Agreement only on Orion IP Delaware's behalf as its managing member), defendants' theory of breach of contract is related to the relationship among Spangenberg and Orion IP and the other alleged shell corporations. Defendants' claim for breach of contract "arises out" of Spangenberg's conduct and plaintiff's activity because of the activities Spangenberg took while managing member of domestic corporation plaintiff, including directing it to file a lawsuit that allegedly resulted in Orion IP's breach of a Licensing Agreement between Orion IP Delaware and defendant DaimlerChrysler. Therefore, subsection (8) authorizes jurisdiction over Spangenberg.

3. Due process

        Once the requirements of the long-arm statute have been met, the court must

determine whether the exercise of jurisdiction over each defendant comports with due process. <u>Kopke</u>, 2001 WI 99, ¶ 8, 629 N.W.2d 662. Due process requires that each defendant "purposefully established minimum contacts in the forum State," <u>Burger King Corp.</u>, 471 U.S. at 474. If a defendant did so, the court must then consider those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" <u>Id.</u> at 476 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 320 (1945)); <u>Hyatt International Corp. v. Coco</u>, 302 F.3d 707, 716 (7th Cir. 2002). The crucial inquiry is whether a defendant's contacts with the state are such that it should reasonably anticipate being haled into court because it has "purposefully availed itself" of the privilege of conducting activities in the forum state, invoking the benefits and protections of the state's laws. <u>International Medical Group, Inc. v. American Arbitration Association, Inc.</u>, 312 F.3d 833, 846 (7th Cir. 2002) (citing <u>Burger King</u>, 471 U.S. at 474). Specific personal jurisdiction is established when a lawsuit "arise[s] out of" or is "related to" a party's minimum contacts with the forum state. <u>Hyatt International Corp.</u>, 302 F.3d at 716.

Third party defendant Spangenberg purposefully established minimum contacts in Wisconsin, as shown by his March, 2007 directive that Taurus IP be formed and capitalized and file suit in Wisconsin against defendants. Because defendants' claims include a claim for breach of contract arising from plaintiff's filing of suit at Spangenberg's direction,

defendants' claim "arises out of" Spangenberg's contacts.  As <u>Burger King Corp.</u> made clear, Spangenberg need not have actually visited Wisconsin to be subject to its personal jurisdiction; it is enough that Spangenberg purposefully directed his efforts toward Wisconsin.  <u>Burger King Corp.</u>, 471 U.S. at 476.  Third party defendants contend that Spangenberg's direction to file suit in Wisconsin is not a contact from which the claim arises because he cannot be held liable for his action as an officer.  However, the defendants' claim is that Spangenberg is using the corporate entities to perpetrate a fraud and breach a contract, not that he is acting merely as plaintiff's officer.  <u>Oxmans' Erwin Meat Co. v. Blacketer</u>, 86 Wis. 2d 683, 692, 273 N.W.2d 285, 289 (1979) (officers may be held liable for tortious acts even if acting on behalf of corporation); <u>see</u> <u>also</u> <u>Norkol/Fibercore, Inc. v. Gubb</u>, 279 F. Supp. 2d 993, 997 (E.D. Wis. 2003) (concluding Wisconsin would not adopt "fiduciary shield" doctrine that denies personal jurisdiction over individual whose presence and activity in state is solely on behalf of his employer or principal); <u>FMC Corp. v. Varonos</u>, 892 F.2d 1308 (7th Cir. 1990); <u>John Walker and Sons, Ltd. v. DeMert & Dougherty, Inc.</u>, 821 F.2d 399 (7th Cir. 1987).

Third party defendant Spangenberg purposefully availed himself of the privilege of filing suit in Wisconsin through plaintiff.  He should have reasonably anticipated that he could be haled before this court to address charges of breach of contract and fraudulent inducement because he allegedly promised a comprehensive settlement while representing

27

Orion IP Delaware during settlement negotiations.  Later, he directed plaintiff to file suit covering essentially the same technology against the same defendants for a patent owned originally by Orion IP Delaware.  Thus, the assertion of personal jurisdiction over Spangenberg comports undeniably with "fair play and substantial justice."

Because personal jurisdiction over third party defendants comports with both statutory and due process requirements, third party defendants' motions to dismiss for lack of personal jurisdiction will be denied.


4. <u>Defendants' motions in the alternative for additional discovery or dismissal of the entire action</u>

These motions are unnecessary.  Defendants have established personal jurisdiction over third party defendants, so defendants' motions in the alternative for additional discovery to establish personal jurisdiction or dismissal of the entire action for lack of indispensable parties will be denied as moot.


B. <u>Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)</u>

Before addressing the substances of the motions to dismiss, the court must determine the applicable substantive law.  This requires a choice of law analysis.

1.  Choice of law

In a federal lawsuit based upon diversity of citizenship, the court will apply the choice of law principles of the jurisdiction in which it sits to determine the substantive law that will apply.  Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941).  Therefore, Wisconsin's choice of law principles apply.  The choice of law is made on an issue-by-issue basis.  International Administrators, Inc. v. Live Insurance Co., 753 F.2d 1373, 1376 n.4 (7th Cir. 1985).  Defendant DaimlerChrysler alleges both breach of contract and tort claims for fraudulent inducement and conspiracy.  The Licensing Agreement contains a choice of law provision stating that Texas law covers "[t]his agreement and matters connected with the performance thereof."

As a general rule, Wisconsin law recognizes validly executed choice of law provisions in the absence of any public policy reasons to disregard them, Bush v. National School Studios, Inc., 139 Wis. 2d 635, 642, 407 N.W.2d 883 (1987), but this is true primarily of contract disputes.  Tort claims generally fall outside the scope of choice of law provisions. CERAbio LLC v. Wright Medical Technology, Inc., 410 F.3d 981, 987 (7th Cir. 2005) (citing Kuehn v. Children's Hospital, 113 F.3d 1296, 1302 (7th Cir. 1997)).  A choice of law provision may be construed to govern tort disputes, but only if "it is clear that this is what the parties intended."  Kuehn, 113 F.3d at 1302.

Thus, Texas law applies to defendants' breach of contract claims under the choice of

law provision in the Licensing Agreement.  However, defendants' fraudulent inducement and conspiracy claims are not subject to the provision because it is unclear whether the parties intended Texas law to cover tort claims.

When a choice of law provision does not apply, the law of the forum state generally applies unless it is "clear" that the contacts in the nonforum state are of "greater significance" than the contacts in the forum state.  State Farm Mutual Automobile Insurance Co. v. Gillette, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662.  However, if the laws of the competing states are the same, courts in Wisconsin apply the law of Wisconsin regardless of the relative state contacts.  CERAbio LLC, 410 F.3d at 987 (citing Deminsky v. Arlington Plastics Machinery, 259 Wis. 2d 587, 657 N.W.2d 411, 420 (2003)).

With respect to the alleged tortious behavior, the parties' contacts in Texas are of greater significance than their contacts in Wisconsin.  The Licensing Agreement was created pursuant to a lawsuit filed in Texas by Orion IP Delaware, a Delaware corporation, at the direction of third party defendant Spangenberg, a Texas resident.  Shortly after Orion IP Delaware had filed suit and shortly before settlement discussions, the '658 patent was transferred to Caelum IP and then Constellation IP, both Texas corporations.  The two Wisconsin companies allegedly involved in the conspiracy were not created until more than one year after settlement was reached, long after the alleged fraudulent inducement had occurred and the alleged conspiracy was under way.

30

It is unnecessary to decide this point, however, because the parties have pointed to no substantial differences in Texas and Wisconsin law on the law of fraudulent inducement or civil conspiracy.   Moreover, the states' respective laws appear equivalent for both fraudulent inducement, Coronado Transmission Co. v. O'Shea, 703 S.W.2d 731, 735 (Tex. App. 1985) (in Texas, contract may be reformed when mistake of one party is coupled with fraud or inequitable conduct of other party); Russ ex rel. Schwartz v. Russ, 2007 WI 83, ¶ 37, 734 N.W.2d 874 (in Wisconsin, contract may be reformed when mistake of one party is coupled with fraud or inequitable conduct of other party), and civil conspiracy, Hong Kong Development, Inc. v. Nguyen, 229 S.W.3d 415, (in Texas, civil conspiracy requires two or more persons, object to be accomplished, meeting of the minds, one or more unlawful, overt acts, damages and underlying tort); Segall v. Hurwitz, 114 Wis. 2d 471, 481, 339 N.W.2d 333, 338 (Ct. App. 1983) (in Wisconsin, civil conspiracy requires concerted action to accomplish unlawful purpose and underlying tort). Therefore, I will apply Wisconsin law to the issues of fraudulent inducement and civil conspiracy.

2.  Erich Spangenberg and nonpracticing entities as alter egos in the setting of 12(b)(6) motions to dismiss

Third party defendants rely on the corporate form of the nonpracticing entities for many of their arguments in support of dismissing defendants' claims.  However, defendants

31

have alleged that third party defendants are "alter egos," or a "single business enterprise," and thus corporate form may be disregarded.

As in the personal jurisdiction setting, in determining whether corporate form should be disregarded I look to Texas law for the Texas entities Orion IP, Constellation IP and Plutus IP, and look to Wisconsin law for the Wisconsin entities Taurus IP and Plutus IP Wisconsin.  Select Creations, 852 F. Supp. at 774.  As I discussed above in the setting of personal jurisdiction, both Wisconsin and Texas law permit the corporate veil to be pierced when a corporation is an "alter ego" of another entity.  Castleberry, 721 S.W.2d at 272; Consumer's Co-op, 142 Wis. 2d at 484.  However, unlike in the personal jurisdiction setting, I consider only the facts alleged in the amended counterclaims (and Licensing Agreement), not the additional jurisdictional facts submitted by defendants.

In their briefs on the question of dismissal, the parties appear to forget that defendants' *claims* are for breach of contract and fraud (under a theory of civil conspiracy); the equitable *remedy* they seek is piercing the corporate veil.  Under Fed. R. Civ. P. 8 and 9, litigants are required to plead claims, not remedies.  Fed. R. Civ. P. 8(a)(2) (in complaint, litigants need only set out "short and plain statement of the claim showing that the pleader is entitled to relief").  Although defendants' citation to Uebelacker had no relevance to their personal jurisdiction opposition brief, it applies in the 12(b)(6) setting.  In other words, defendants' mere allegations may carry the day here.

32

At the pleading stage, the court is not concerned with the merits of litigants' arguments. In their amended complaint, defendants have alleged that third party defendant Spangenberg is an alter ego of the corporations he manages and they have alleged specific ways in which he allegedly misused his control over the companies he managed. Defendants allege that Spangenberg managed the companies in conjunction with one another and that he exercised sufficient control over each company to justify piercing the corporate veil. Among other allegations, defendants maintain that in his position as managing member of the Orion-related companies, Spangenberg directed the corporations to transfer the '658 patent shortly after filing the first lawsuit, shortly before settlement discussions and shortly before the present lawsuit was filed. Defendants allege also that Spangenberg has complete control over the companies' finances and policies.

Dismissal is appropriate when it is clear beyond a doubt that a litigant may not prevail on its claim or when the remedy it is seeking (in this case, piercing the corporate veil) is unavailable as a matter of law. That is not the case here. It is not clear beyond a doubt that defendants will not be able to prevail on their claim that the nonpracticing entities are alter egos of third party defendant Spangenberg, and therefore that corporate veil should be pierced. The allegations establish that Spangenberg exerted enough control over the nonpracticing entities to warrant holding him liable as their alter ego for breach of contract, fraud or civil conspiracy. This is sufficient to retain the complaint against third party

33

defendants as parties bound by each others' acts, including the acts of third party defendant's predecessors, such as Orion IP's predecessor Orion IP Delaware.  Cappuccitti v. Gulf Industrial Products, Inc., 222 S.W.3d 468, 481 (Tex. App. 2007); Select Creations, 852 F. Supp. at 774.


3.  Motion to dismiss breach of contract claim

Under Texas law, the "primary concern" in construing a contract "is to ascertain the true intentions of the parties as expressed in the written instrument."  Lenape Resources Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996) (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1993)).  A court must avoid using extrinsic evidence to construe the language of a contract unless the contract is first determined to be ambiguous.  CenterPoint Energy Houston Electric, L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex. App. 2005).  Contract language is unambiguous if it is "so worded that it can be given a certain or definite legal meaning or interpretation."  Lenape Resources, 925 S.W.2d at 574.  Only if the meaning of the language is "is uncertain and doubtful" or "reasonably susceptible to more than one meaning" is the contract ambiguous.  Id. (citations omitted).

Defendants contend that third party defendants  breached Article 8.1(a)(iii) of the Licensing Agreement, in which Orion IP Delaware represented that it had "not assigned or otherwise transferred to any other Person any rights to any causes of action, damages or

34

other remedies, or any Orion Patents, claims, counterclaims or defenses, relating to the" Texas lawsuit.  Third party defendants contend that this language could not have been intended to cover Orion IP Delaware's assignment of the '658 patent because defendants became aware in discovery during the Texas lawsuit that Orion IP Delaware had assigned the '658 Patent to Caelum IP more than a year and a half before settlement.  This argument appears to invite the court to consider extrinsic evidence when construing the language of the Licensing Agreement.  Coming from Spangenberg and the NPEs, such an invitation is puzzling in light of their repeated appeals to the merger clause in Article 8.9 ("embod[ying] the entire understanding of the parties") to exclude consideration of Spangenberg's allegedly fraudulent assurances.  Moreover, under Texas law, a court may consider extrinsic evidence only after a contract is determined to be ambiguous.  CenterPoint Energy Houston Electric, L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex. App. 2005).

The need to consider the extrinsic evidence never arises because the language in Article 8.1 is clear.  The article distinguishes "rights to any causes of action" from "Orion Patents, claims, counterclaims or defenses," indicating that Orion IP represented both that it had not transferred causes of action arising from the Orion Patents and that it had not transferred any other causes of action "related" to the Texas lawsuit.

What other causes of action could possibly be "related" to the Texas lawsuit?  The obvious answer is any cause of action arising from the same set of facts.  Orion IP had the

'658 patent when the Texas litigation began, but assigned it five days later.  The accused technology in that case was identical to that accused in this case.  Therefore, Orion IP could have brought an infringement claim for the '658 patent in the Texas lawsuit.  I conclude that defendants have stated a claim that Orion IP Delaware assigned a right to a cause of action "related" to the Texas lawsuit when it assigned the '658 patent because it could have brought a claim of infringement for the '658 patent under the same set of facts crucial to alleged infringement in the Texas lawsuit.

Defendants point to several other provisions in the Licensing Agreement that third party defendants allegedly breached, including Articles 2.1 and 3.5, but these provisions do not relate to plaintiff's filing suit for infringement of the '658 patent.  Article 2.1 limits the release explicitly to "activities that would have been licensed under this Agreement if they had been performed on or after the Effective Date."  Therefore, the release covers only activities that would have been licensed, and only activity performed before the Effective Date.  The only technology licensed is technology "falling within the scope of one or more claims of the Orion Patents."  The parties agree that the '658 patent is not itself an "Orion Patent."  Thus, Article 2.1 is of no use to defendants.

As for Article 3.5, its context shows the provision is limited to use by "third parties," that is, persons other than the parties to the agreement and their related companies.  Article 3.5 states that there is "no release or license . . . to any Third Party . . . for the combination

36

[or use] of the Licensed Technology with any other items. . . except as necessary for the normal and intended use of the Licensed Technology themselves." Thus, Article 3.5 does not provide any protection to defendants.

### 4. Motions to dismiss fraudulent inducement claim

Defendant DaimlerChrysler has pleaded a claim for fraudulent inducement in the alternative to its breach of contract claims. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To meet the particularity of Rule 9(b), a plaintiff must "allege the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." Slaney v. The International Amateur Athletic Federation, 244 F.3d 580, 599 (7th Cir. 2001); see also Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992). This pleading rule serves three main purposes: (1) protecting an adverse party's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse party. Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1327 (7th Cir. 1994) (citing Uni*Quality, Inc. v. Infotronx,

37

Inc., 974 F.2d 918, 924 (7th Cir. 1992).

Defendant DaimlerChrysler alleges in its amended counterclaim and third party complaint that on February 9, 2006, during settlement negotiations, third party defendant Spangenberg, on Orion IP Delaware's behalf, accepted defendant DaimlerChrysler's request to negotiate a comprehensive settlement that would release all potential claims against defendant DaimlerChrysler and its website and that Spangenberg did not tell DaimlerChrysler that Orion IP Delaware had transferred the '658 patent to another company controlled by Spangenberg or that he intended to use the '658 patent in a separate lawsuit alleging infringement by the same website activities. Defendants' allegations identify the time, place and content of the message and the identity of the persons making the representations. Less clearly, the allegations also identify the method of communication as that used by the parties during their settlement agreement negotiations. The allegations sufficiently put plaintiff and third party defendants on notice of the claim. I conclude that defendant DaimlerChrysler has stated a claim with sufficient particularity to survive the motion to dismiss.

Plaintiff and third party defendants contend that the tort claims asserted against them must be dismissed under the economic loss doctrine. The economic loss doctrine "bars tort recovery for economic loss suffered by commercial entities," State Farm Mutual Automobile Insurance Co. v. Ford Motor Co., 225 Wis. 2d 305, 311, 592 N.W.2d 201, 204 (1999), and

38

requires sophisticated commercial parties to "pursue only their contractual remedies when asserting an economic loss claim." Digicorp, Inc. v. Ameritech Corp., 2003 WI 54, ¶ 34, 262 Wis. 2d 32, 662 N.W.2d 652. The doctrine strives to protect the freedom of parties to allocate economic risk by contract, Kaloti Enterprises, Inc. v. Kellogg Sales Company, 2005 WI 111, ¶ 28, 283 Wis. 2d 555, 699 N.W.2d 205, preserve the distinction between contract law and tort law, Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis. 2d 395, 403, 573 N.W.2d 842, 846 (1998), and encourage the party in the best position to assess risk, the buyer, to "assume, allocate or insure against [that] risk." Id. at 410.

Wisconsin law recognizes an exception to the economic loss doctrine for intentional misrepresentation claims that allege fraud in the inducement. Kailin v. Armstrong, 2002 WI App 70, ¶¶ 28-30, 252 Wis. 2d 676, 643 N.W.2d 132. This exception is consistent with the policy behind the economic loss doctrine insofar as "one party's ability to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent conduct." Id. at ¶ 28, 643 N.W.2d 132 (citing Douglas-Hanson Co., Inc. v. BF Goodrich Co., 229 Wis. 2d 132, 144-45, 598 N.W.2d 262 (Ct. App. 1999)).

In Kaloti Enterprises, 2005 WI 111, ¶ 42, 699 N.W.2d 205, the Wisconsin Supreme Court explained that the exception to the economic loss doctrine for claims of fraud in the inducement is a narrow one. The exception applies only "where the fraud is extraneous to, rather than interwoven with, the contract." Id. (quoting Digicorp, 2003 WI 54, ¶ 47, 662

39

N.W.2d 652).  Thus, the fraud must concern "matters whose risk and responsibility did not relate to the quality or characteristic of the goods for which the parties contracted or otherwise involved performance of the contract."  Id. (citing Huron Tool & Engineering Co. v. Precision Consulting Services, Inc., 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)).

Plaintiff contends that the fraudulent inducement exception does not apply to defendant DaimlerChrysler's fraudulent inducement claim because the inducement involves a promise regarding the scope of the settlement.  I agree.  The Licensing Agreement addresses the scope of Orion IP's promise to license patents and release related claims.  Although the '658 patent and Spangenberg's alleged intent to file a second lawsuit are "outside" the contract in the sense that the contract does not discuss these items, the contract does anticipate that Orion IP may have numerous "related Companies" and numerous patents. Defendants could have ensured greater protection from future lawsuits, if, for example, they had bargained for broader definitions of such terms as "Licensed Technology," "Orion Related Companies" or "Orion Patents."  Spangenberg's alleged misrepresentations related directly to the scope of the license and release provisions of the Licensing Agreement.  Thus, third party defendants' alleged misrepresentations are interwoven with the contract and are barred under the economic loss doctrine.  Defendant DaimlerChrysler's claim for fraudulent inducement fails to state a claim for which relief can be granted.

5.  Motion to dismiss conspiracy "claims"

"Civil conspiracy" is a theory by which a plaintiff (counter, third party or otherwise) may pursue a claim against a group of defendants not all of whom might be subject to suit without evidence of an agreement between them.  The basic gist of defendants' argument is that third party defendants are all one, aligned for the purpose of deceiving would-be infringers into entering into expensive licensing agreements and then thanking them by filing new lawsuits, all made possible by sleight of hand.

As third party defendant Spangenberg points out, a civil conspiracy requires an underlying tort.  Segall v. Hurwitz, 114 Wis. 2d 471, 481, 339 N.W.2d 333, 338 (Ct. App. 1983).  Defendant Mercedes-Benz USA, in its amended complaint, stated no independent tort claim, alleging only that it has been harmed as a result of plaintiff's and third party defendants' alleged conspiracy.   Defendant DaimlerChyrsler's only tort claim is for fraudulent inducement, which I have concluded fails to state a claim.   Because no independent tort claim survives plaintiff's and third party defendants' motions to dismiss, defendants' civil conspiracy claims fail to state a claim for which relief can be granted.

ORDER

IT IS ORDERED that

1.    The motions of third party defendants third party defendant Erich

41

Spangenberg, Orion IP, LLC, Plutus IP, LLC and Constellation IP, LLC to dismiss the claims of third party plaintiffs DaimlerChrysler Company LLC and Mercedes-Benz USA, INC's for lack of personal jurisdiction are DENIED;

2.     Defendants' motions for additional discovery and dismissal of the entire case for absence of indispensable parties are DENIED as moot;

3.     The motions of plaintiff Taurus IP and third party defendants Erich Spangenberg, Orion IP, LLC, Plutus IP, LLC, Constellation IP, LLC and Plutus IP Wisconsin, LLC to dismiss third party plaintiffs DaimlerChrysler Company LLC and Mercedes-Benz USA, INC's claims of breach of contract are DENIED; and

4.     The motions of plaintiff Taurus IP and third party defendants Erich Spangenberg, Orion IP, LLC, Plutus IP, LLC, Constellation IP, LLC and Plutus IP Wisconsin, LLC to dismiss third party plaintiffs DaimlerChrysler Company LLC's claims of fraudulent inducement and third party defendants DaimlerChrysler Company LLC and

42

Mercedes-Benz USA INC's claims of civil conspiracy are GRANTED.

Entered this 15th day of October, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge